UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
---------------------------------------------------------------

COLUMBIA PARK EAST MHP, LLC, et al.

           Plaintiffs,

           v.

U.S. BANK NATIONAL ASSOCIATION,
et al.,

           Defendants.

---------------------------------------------------------------

CASE NO. 1:18-CV-1086

OPINION & ORDER
[Resolving Doc. 11]

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiffs Columbia Park East MHP, LLC; Columbia MHC East LLC; and Kenneth Burnham (together, "Plaintiffs") bring fraudulent misrepresentation, unfair and deceptive trade practices, and Racketeer Influenced and Corrupt Organizations Act ("RICO") claims against Defendants U.S. Bank National Association; C-III Asset Management LLC; Andrew Farkas; and several John Does. Plaintiffs allege that Defendants have used Plaintiffs' commercial loan to seek illegal and fraudulent fees not allowed for by the loan contract.

Defendants now move to dismiss Plaintiffs' complaint for failure to state a claim.[1] Alternately, Defendants ask the Court to abstain from hearing this case because of the currently pending state-court foreclosure action involving the commercial loan between these parties.

For the following reasons, the Court **GRANTS** Defendants' motion to dismiss.

## I. Background

Plaintiffs allege that a commercial loan between themselves and Defendants has given rise to a RICO enterprise.[2] Plaintiffs allege that Defendants U.S. Bank, C-III Asset Management, and Andrew Farkas, along with numerous John Does and the court-appointed Receiver in a state-court

---

[1] Doc. 11. Plaintiffs oppose. Doc. 23. Defendants reply. Doc. 25.
[2] *See* Doc. 1 at ¶¶ 36-49.

foreclosure action involving Plaintiffs' property, have conspired to charge illegal and fraudulent fees

and to seize assets not secured by the commercial loan.[3]

Specifically, Plaintiffs allege that after the state court foreclosed on Plaintiffs' property, the

Receiver has sent a number of emails and letters demanding that Plaintiffs return approximately

$330,000 to the Receiver's accounts.[4]  Plaintiffs also allege that the Receiver has misappropriated

over $1.9 million in payments and expenses owed to Plaintiffs.[5]

Defendants, according to Plaintiffs, have demanded (through email) default interest and a

"late fee" totaling over $4 million, allegedly based on Plaintiffs' commercial loan.[6]  Finally,

Plaintiffs allege that Defendants sent a number of billing and payment statements in furtherance of

their alleged racketeering scheme.[7]

Plaintiffs argue that each of these communications constitutes mail or wire fraud.  All of

these communications occurred between April 2017 and the present.[8]

## II. Legal Standard

When considering a motion to dismiss for failure to state a claim, the Court construes the

complaint in the light most favorable to the nonmoving party, accepting its allegations as true, and

drawing all reasonable inferences in favor of finding the complaint sufficient.[9]  In order to survive a

motion to dismiss or for judgment on the pleadings, the complaint must allege sufficient facts "to

state a claim for relief that is plausible on its face."[10]  While "detailed factual allegations" are

---

[3] *Id.*
[4] *Id.* at ¶ 42(i).  Since this motion was filed, the state court has held Plaintiffs in contempt for their refusal to return this $330,000.  *See* Doc. 26-2.
[5] *Id.* at ¶ 42(ii)-(iii).
[6] Doc. 1 at ¶ 42(iv).
[7] *Id.* at ¶ 42(v).
[8] *Id.* at ¶ 41 (describing the enterprise as occurring "[f]rom in or about April 2017 to the present time").
[9] *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 534 (6th Cir. 2017) (quoting *Bikerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)); *Engler v. Arnold*, 862 F.3d 571, 574–75 (6th Cir. 2017) (quoting *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006)).
[10] *See* *Nikolao v. Lyon*, 875 F.3d 310, 317 (6th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

unnecessary, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action."[11]

### III. Analysis

#### A. *RICO*

Plaintiffs' RICO claim fails because they have not adequately alleged a sufficient RICO enterprise.

In order to allege that a RICO enterprise exists, a plaintiff must allege that the enterprise has sufficient "continuity."[12] A plaintiff can allege that the RICO enterprise engaged in a long, but closed-ended, period of racketeering activity.[13] Or a plaintiff may present facts showing that the RICO enterprise engaged in open-ended racketeering activity that could continue into the future.[14]

Plaintiffs concede that Plaintiffs have alleged the enterprise's racketeering activity began in April 2017. Plaintiffs brought this case in May 2018, less than a year later. The Sixth Circuit has previously held that even seventeen months is not a sufficiently long time to meet RICO's closed-ended continuity test.[15] Because this alleged enterprise existed for only twelve months, Plaintiffs' cannot satisfy RICO's closed-ended enterprise continuity requirement.[16]

Therefore, in order to state a RICO claim, Plaintiffs' alleged RICO enterprise must be open-ended and capable of continuing racketeering activities into the future. But Plaintiffs' alleged enterprise has a definitive end date: the end of the pending state foreclosure action.

Here, Plaintiffs allege that Defendants have charged fees not authorized by the property loan agreement and that the Receiver has seized property in violation of the state court's orders.

---

[11] *See id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Engler*, 862 F.3d at 575 (quoting *Ashcroft*, 556 U.S. at 678)).

[12] *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241-42 (1989).

[13] *Id.*

[14] *Id.*

[15] *Heinrich v. Waiting Angels Adoption Services, Inc.*, 668 F.3d 393, 404-05 (6th Cir. 2012) (citing *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994)).

[16] Plaintiffs conceded this point in their motion to dismiss response. Doc. 23 at 25 ("The subject Complaint alleges racketeering activity beginning in April 2017, and thus would not appear to be substantial period of enough time to meet the closed-ended continuity requirement.").

The theme tying all of these acts together is the pending state court foreclosure action. Once that action is decided, the alleged enterprise will no longer have the ability to perform any of Plaintiffs' alleged racketeering activities.

If the state court decides in Defendants' favor, then the fees charged by Defendants and the Receiver's property seizures were proper.[17]  If so, Plaintiffs' property will be foreclosed.

Or, the state court may decide that Defendants improperly charged Plaintiffs fees and that the Receiver acted improperly.  Then, the foreclosure action will presumably be decided in Plaintiffs' favor.  If so, Defendants will have to cease attempts to collect their alleged wrongful fees and the property will leave receivership.

Either way, however, the state court foreclosure action will end.  And when that foreclosure case ends, so too does the possibility of any "racketeering" by the alleged enterprise.

Plaintiffs attempt to escape this conclusion by alleging that charging improper fees represents Defendants' regular way of doing business.  Plaintiffs' only facts supporting this argument relate to a 2013 case that Plaintiffs voluntarily dismissed with prejudice.[18]

Even assuming that *res judicata* principles would not bar consideration of the facts from the 2013 litigation in this case,[19] the 2013 litigation involved a different enterprise.[20]  The actions of one enterprise cannot support an allegation that a separate enterprise will engage in continuing criminal activity.[21]

---

[17] Further, if the state court finds these charges proper, they obviously cannot be RICO predicate mail or wire fraud.

[18] Doc. 11-5.

[19] *See, e.g.*, *Misischia v. St. John's Mercy Health Sys.*, 457 F.3d 800, 804-05 (8th Cir. 2006) (barring a RICO claim on *res judicata* grounds because a sufficient number of predicate acts occurred to sustain the RICO claim before a completed prior suit began).

[20] *Compare* Doc. 1 (naming U.S. Bank, Farkas, Todd Bragg, C-III Asset Management, and the Receiver, among others, as members of the enterprise), *with* Doc. 1-3 (naming Keybank, Newbury, and U.S. Bank as members of the enterprise).

[21] Plaintiffs might protest that both enterprises included Defendant U.S. Bank.  But U.S. Bank's only alleged actions in either case involved attempts to collect fees or otherwise enforce a valid loan.  U.S. Bank's communications using the mails and wires might involve a breach of contract, but they are not mail and wire fraud RICO predicates. *See Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152-53 (6th Cir. 1987) ("Sending a financial statement which misconstrues . . . the terms of the contract may breach the contract but it does not amount to a RICO mail fraud cause of action."); *Helios Intern. S.A.R.L. v. Cantamessa USA, Inc.* 2013 WL 3943267, at *6 (S.D.N.Y. July 31, 2013) ("Plaintiffs cannot turn this case into a RICO case simply by recasting breach of contract [and common business torts] as conspiracies of deception and fraud." (alteration in original)).

Case No. 1:18-CV-1086
Gwin, J.

Plaintiffs have thus failed to state a valid RICO claim.

**B.** *Plaintiffs' Other Claims*

Plaintiffs also bring claims for fraudulent misrepresentation and unfair and deceptive trade practices. Plaintiffs' fraudulent misrepresentation claim is a state law tort.[22] Plaintiffs' unfair and deceptive trade practices claim does not specify whether it is brought under state or federal law. But Plaintiffs argue in their motion to dismiss that Minnesota state law should apply to this claim,[23] so the Court presumes that Plaintiffs intended state law to apply to this claim as well.

Plaintiffs' RICO claim was thus their only federal cause of action. Because diversity jurisdiction does not exist here,[24] only supplemental jurisdiction would allow the Court to consider Plaintiffs' remaining state law claims. Because the Court has no original jurisdiction over these remaining claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.[25]

And importantly, Plaintiffs' state law claims track defenses that Plaintiffs can make to the state court handling the foreclosure. No good reason appears for having two courts deal with the same legal issues.

The Court therefore **DISMISSES** those state law claims without prejudice.

---

[22] *See, e.g.,* *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 659 (2008) (noting that fraud-based claims are "traditional state-law claims"); *see also* *Buchanan v. Improved Properties, LLC*, 7 N.E. 634, 641 (Ohio Ct. App. 2014) (laying out the elements for Ohio fraudulent misrepresentation).
[23] Doc. 23 at 13.
[24] Plaintiffs allege that diversity jurisdiction exists, but they have not alleged the citizenship of Defendant Farkas. Defendants have averred that Defendant Farkas is a citizen of New York, as is Plaintiff Burnham. Plaintiffs have not challenged this. As such, it appears that complete diversity—and therefore diversity jurisdiction—does not exist here. *See* *Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806) (holding that Congress's grant of diversity jurisdiction to the federal courts requires that no plaintiff and defendant be from the same state).
[25] *See* 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For those reasons, the Court **GRANTS** Defendants' motion to dismiss.[26]


IT IS SO ORDERED.


Dated:  August 13, 2018                                    s/         James S. Gwin
                                                                    JAMES S. GWIN
                                                                    UNITED STATES DISTRICT JUDGE

---

[26] Because the Court is able to dismiss Plaintiffs' claims without discussing the propriety of the state-court Receiver's actions or the parallel state proceedings, the Court expresses no opinion on whether abstention might be appropriate under *Younger* or *Colorado River* because of the potential comity, federalism, and judicial administration issues here. *See, e.g.*, *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 716 (1996) (noting that although it requires "exceptional circumstances . . . abstention is warranted by considerations of proper constitutional adjudication, regard for federal-state relations, or wise judicial administration" (internal quotation marks and citations omitted)).